**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 21-2045

_____

CATHY T. MOORE,

        Plaintiff – Appellant,

   v.

COLUMBIA SUSSEX MANAGEMENT LLC, d/b/a Hilton Head Marriott Resorts &
Spa; COLUMBIA SUSSEX CORPORATION; COLUMBIA PROPERTIES HILTON
HEAD LLC,

        Defendants – Appellees.

_____

Appeal from the United States District Court for the District of South Carolina, at Beaufort.
Bruce H. Hendricks, District Judge.  (9:19-cv-00394-BHH)

_____

Submitted:  October 5, 2022                        Decided:  December 16, 2022

_____

Before THACKER and HEYTENS, Circuit Judges, and MOTZ, Senior Circuit Judge.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**ON BRIEF:** William F. Barnes, III, PETERS, MURDAUGH, PARKER, ELTZROTH &
DETRICK, PA, Hampton, South Carolina, Appellant.  Christian Stegmaier, Kelsey J.
Brudvig, COLLINS & LACY, P.C., Columba, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this premises liability case, Cathy T. Moore appeals the district court's order granting summary judgment in favor of Appellees, who operate a Marriott-branded hotel in Hilton Head, South Carolina. We agree with Moore that genuine issues of material fact precluded entry of summary judgment, and so vacate the district court's order and remand for further proceedings.

I.

The following facts are undisputed. On the morning of January 15, 2016, the Moore family traveled from their home in Blackshear, Georgia to a gymnastics tournament in which Moore's daughters were competing. It had been raining throughout the trip, including when Moore arrived at the Hilton Head Marriott that was hosting the competition.

An hour after checking in, Moore received a phone call asking whether she would meet two of the competitors downstairs and escort them into the hotel. The children were being dropped off at a side entrance "so they didn't get soaking wet" from the rain after "[g]etting out of the car." Moore went downstairs to the area where the children would be dropped off and observed an enclosed vestibule that led to exterior doors. The vestibule had tile flooring and its doors were made of "solid glass." Looking "from the inside to the outside," Moore could see that it was still raining, but Moore did not notice "any water on the floor on the vestibule." After Moore opened the first set of doors leading to the vestibule and stepped inside, she immediately lost her footing and fell onto the floor. A

2

subsequent hospital visit confirmed that Moore had "broken bones in her shoulder and foot."

Moore filed suit in state court, and Appellees subsequently removed the action to federal court in South Carolina, invoking diversity jurisdiction. After discovery, Appellees moved for, and the district court granted, summary judgment in Appellees' favor. Applying South Carolina law, the court concluded that Appellees were entitled to judgment as a matter of law because (1) they lacked notice of the rainwater in the vestibule, (2) the vestibule's condition was an "open and obvious danger," and (3) they did not breach their duty to exercise reasonable care.

Moore timely appealed.

## II.

We review de novo a district court's grant of summary judgment, "applying the same legal standards as the district court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649 (4th Cir. 2021) (quoting *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020)). "Summary judgment is appropriate if a party 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Wilkins v. Montgomery*, 751 F.3d 214, 220 (4th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3

Turning first to the issue of notice, "[i]t has long been the law in South Carolina that a merchant is not an insurer of the safety of his customer but owes them only the duty of exercising ordinary care to keep the premises in reasonably safe condition." *Milligan v. Winn-Dixie Raleigh, Inc.*, 254 S.E.2d 798, 799 (S.C. 1979). Accordingly, to recover damages from injuries sustained during a slip and fall, Moore must demonstrate that Appellees had "actual or constructive notice of [the] unsafe condition and a reasonable opportunity to correct it." *Mullen v. Winn-Dixie Stores, Inc.*, 252 F.2d 232, 233 (4th Cir. 1958).

Although Moore does not make an actual notice argument, she has offered evidence from which a jury could conclude that Appellees had constructive notice of the vestibule's condition because the rainwater was present "sufficiently long that [Appellees] should have discovered it." *Wimberly v. Winn-Dixie Greenville, Inc.*, 165 S.E.2d 627, 629 (S.C. 1969). Moore maintains that it had been raining for at least one hour at the time of her fall, and that enough rain had accumulated in the vestibule that most of its surface was covered in water. On these facts, a reasonable juror, relying on her "common knowledge [and] experience," could infer that because large amounts of water take time to accumulate, the water in the vestibule was present long enough for Appellees to have detected it. *Cf. Brouwer v. Sisters of Charity Providence Hosps.*, 763 S.E.2d 200, 204 (S.C. 2014). Such an inference would be particularly reasonable if the jury accepts Moore's argument that tracked-in rainwater was a recurrent condition at the hotel. *See Wintersteen v. Food Lion, Inc.*, 542 S.E.2d 728, 730 n.1 (S.C. 2001) (explaining that while "mere recurrence alone is insufficient to establish constructive notice, there may be certain factual

4

patterns . . . [that are] sufficient to create a jury issue as to the defendant's constructive notice at the time of the accident.").

As to whether the vestibule's condition was "open and obvious" to Moore, the record evidence is also mixed. To be sure, Moore acknowledged that it was raining throughout the day, including just before she fell. Moore further attested to her general awareness that water can be tracked inside of a building on rainy days. But the record evidence also reveals that there were no discernable puddles of water in the vestibule, which may have prevented Moore from realizing the vestibule's slippery condition. Ultimately, this too is a question of fact for a jury to resolve.

Last, it is genuinely disputed whether Appellees breached their duty to exercise reasonable care. As Appellees themselves acknowledge, premises owners have "a duty to warn an invitee . . . of latent or hidden dangers of which the landowner has knowledge or should have knowledge." Appellees' Br. at 25 (quoting *Sims v. Giles*, 541 S.E.2d 857, 863 (S.C. Ct. App. 2001)). Thus, if the jury determines that Appellees had constructive knowledge of the vestibule's condition but that the condition was not open and obvious, the jury could also determine that Appellees had not sufficiently warned Moore of the vestibule's dangerousness.[*]

---

[*] Although Appellees note that at least one sign was present in the vestibule, the record does not make clear where that sign was located at the time of Moore's fall or whether the sign provided sufficient notice of the floor's condition.

5

III.

In sum, "[w]hile a reasonable jury might not be *compelled* to find in [Moore's] favor . . . a reasonable jury *could* find in her favor, if we assume — as we must in this posture — that it credited her evidence and drew reasonable inferences in her favor." *Scott v. Old Navy, LLC*, No. 20-1253, 2022 WL 2764415, at *5 (4th Cir. July 15, 2022). We therefore vacate the judgment of the district court and remand for further proceedings consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*VACATED AND REMANDED*